**DECLARATION OF STEPHEN RIVERA**

I, Stephen Rivera, of legal age, retired Senior Pilot for the Port of San Juan, Puerto Rico, under oath and subject to the penalties of perjury, hereby declare as follows:

I. Professional Background

1. I am a retired Senior Pilot of the Port of San Juan, licensed for more than 20 years by the Puerto Rico Pilotage Commission pursuant to Act No. 226 of 1999 (Act 226-1999).
2. My retirement was the result of long years of pilotage service and professional dedication to the Port of San Juan. It was not due to statutory age. Act 226-1999 provides in Article 16 that all pilots must mandatorily retire upon reaching seventy (70) years of age. That provision is not applicable in my case, as I stepped down before reaching the mandatory age, after decades of service.
3. Over the course of my career, I conducted ship-handling maneuvers on a wide spectrum of vessels, including ultra-large container ships, post-Panamax cruise ships, petroleum tankers, liquefied petroleum gas (LPG) carriers, and large car-carriers.
4. I hold all requisite pilotage certifications and advanced training, including simulator-based instruction in ship hydrodynamics, tug escort methodology, bridge resource management, and LNG contingency maneuvers.
5. I have taken part in numerous formal safety assessments and navigational studies, including simulation trials, hydrodynamic modeling, and technical sessions convened by the U.S. Coast Guard and the Puerto Rico Pilotage Commission and U.S. Army Court of Engineers.
6. Based on my pilotage experience, seamanship knowledge, and technical participation in simulator-based LNG studies, I am qualified to render professional opinions regarding maneuvering standards, tug utilization, and navigational safety in San Juan Harbor.

II. LNG Operations and Tug Escort Experience

7. Since the commencement of LNG trade through San Juan Harbor, I was directly engaged in professional deliberations concerning escort tug configuration and maneuvering margins.
8. In August 2025, I participated in technical simulations at Siport21, Madrid, alongside fellow pilots, tug masters, and maritime technical experts.
9. These trials demonstrated conclusively that a four-tug escort configuration — all ASD tractor units of adequate horsepower and bollard pull — affords safe margins of control for LNG carriers during docking, undocking, and channel transits in San Juan Bay.
10. To date, LNG tanker maneuvers in San Juan Harbor have been conducted without incident or near miss under this framework.

III. Pilot Discretion vs. Regulatory Authority

11. In every maneuver I conducted, pilotage discretion was exercised in real time — including deployment of available tug assets, order of line-up, tethered versus free-assist positioning, and conning adjustments in response to wind, current, and traffic conditions.

12. Nonetheless, under Articles 4, 5, and 21 of Act 226-1999, pilots do not possess authority to unilaterally establish binding operational standards for the port. Such authority is vested solely in the Puerto Rico Pilotage Commission, with supplementary oversight by the U.S. Coast Guard Captain of the Port.

13. While professional consensus among pilots can inform best practices, it does not create enforceable regulation. Only the Commission, or competent federal authority, may promulgate mandatory standards applicable to all pilots, tug operators, and vessel owners.

IV. Safety Framework and Public Interest

14. In my professional judgment as a career pilot, the present LNG safety framework — namely, four ASD escort-rated tugs combined with U.S. Coast Guard restrictions (daylight-only transits, wind limits, safety/security zones) — provides a robust layer of safeguards for LNG navigation in San Juan Bay.

15. I am not aware of any casualty, incident, or near miss that has compromised navigational safety under this regime.

16. LNG operations form a critical component of Puerto Rico's energy infrastructure. In my opinion, suspending or restricting such maneuvers without valid cause would degrade port efficiency and create unnecessary risks to Puerto Rico's energy security, while providing no added safety benefit.

V. Consclusion

17. Based on decades of practical pilotage,  transit conning, and simulator validation, I conclude that:

- The four-tug <u>escort</u> configuration currently employed in San Juan Bay is safe, effective, and consistent with best international standards of escort tug employment.
- Pilots retain professional discretion for maneuvering decisions in real time, but regulatory authority to impose general standards rests exclusively with the Pilotage Commission and the U.S. Coast Guard.
- The present framework — Commission oversight, Coast Guard restrictions, and pilotage discretion — ensures compliance with law and safe navigation of LNG carriers.

2

18. For the foregoing reasons, I affirm that LNG transits in San Juan Bay, as currently conducted, are safe, seamanlike, and in accordance with established pilotage standards and regulatory mandates.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 24 day of September 2025, in San Juan, Puerto Rico.

Stephen Rivera
Retired Senior Pilot
Port of San Juan

3