**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **CAPT. JAKE ELMSTROM, et al.** | **CIVIL NO.  25-CV-01462 (SCC)** |
| **PLAINTIFFS,** | **RE: COMPLAINT; PRELIMINARY AND PERMANENT INJUNCTION; DECLARATORY JUDGMENT IN ADMIRALTY** |
| **v.** | |
| **NFENERGIA LLC, et al.,** | |
| **DEFENDANTS.** | |

**DECLARATION IN SUPPORT OF OPPOSITION TO PLAINTIFFS'**
**REQUEST FOR A TEMPORARY RESTRAINING ORDER**

I, **JAVIER FIGUEROA SOSA**, of legal age, married, executive and resident of Las Piedras, Puerto Rico, declare, under the provisions of 28 U.S.C. § 1746 as follows:

1. That my name and personal circumstances are those presented above.

2. That I am a duly appointed Commissioner of the Puerto Rico Pilotage Commission since February 2023 as a representative of the PR Shipping Association.

3. That I hold the position of Secretary-Treasurer of the Commission.

4. That I am the General Manager of Moran San Juan, Inc. a corporation dedicated to the provision of towing services and related operations since July of 2018.

5. That I am a duly licensed mariner holding an unlimited U.S. Coast Guard officer's license, Any Gross Tons, Oceans, first issued in 2002. This credential authorizes service on vessels of any size or tonnage, worldwide. In addition, I hold a Master of Towing Vessels license, which I have maintained since approximately 2015, authorizing me to serve as captain of tugboats in all applicable waters.

6. That I am also the VicePresident of the Puerto Rico Shipping Association (Asociación de Navieros de Puerto Rico.

7. That I have read the Opposition to Plaintiffs' Request for a Temporary Restraining Order, drafted by the Pilotage Commission of Puerto Rico attorneys, and to the best of my information and belief, the facts stated in such Opposition are true and accurate.

8. That it is false that the contents and the drafting of the cease and desist communication of August 15, 2025 was issued unilaterally by the Commission's President Jessica Ñeco Morales. Such communication was issued after consultation with me.

9. That Carlos Ramos was not consulted in this communication because by participating as a pilot in a concerted action to usurp the Commission' regulatory powers, Capt. Ramos had inhibited himself from participating in this controversy as the oath he had sworn when named Commissioner was ethically inconsistent with the position he had taken.

10. I believe that Capt. Ramos exclusion from this process was a legal necessity to safeguard the Commission's integrity and independence.

11. The August 15, 2025 was clearly tailored to prohibit the Pilots from attempting to impose operational guidelines not approved by the Commission after exhaustion of the rulemakeing process required under the Uniform Administrative Procedure Law, commonly known in Puerto Rico as the LPAU.

12. The August 15, 2025, communication informed the Pilots that their communciation to Capt. Montes was null and void, because it attempted to usurp the authority of the Commission. As clearly stated in the communication, it only applied to futher communications  of that *nature*, issued by San Juan pilots individually or collectively,

whether or not under a recognized association, and not authorized by the Commission, which lacked official recognition shall be considered null and void. The letter is also clear that the pilots were ordered to cease and desist from issuing any **similar communications** without authorization from the Commission.

13. The August 15, 2025, communication from the San Juan Bay pilots, individually and collectively, attempted to impose operational standards and service conditions beyond their statutory authority, interfering with the Commission's exclusive regulatory powers and the lawful discretion of licensed pilots.

14. When the Commission states in its communication that pilots may not issue de facto "standards" outside the Commission's process, it means that any binding operation condition (e.g., fixed tug power spreads, environmental cutoffs, training mandates) must be adopted through the procedures that Law 226-1999 and the "LPAU" require-either (a) formal rulemaking (notice, comment, statement of reasons, filing/publication) for generally applicable rules or (b) a contested-case order with notice, opportunity to be heard, findings and appeal. LPAU also permits temporary/emergency rules for urgent situations, with reasons stated and prompt filing. The August 15 communication simply channels any proposal for a binding "standard" into those lawful tracks; it does not restrict safety reporting or any other of the conditions the Pilots complain herewith.

15. On September 23, 2025, another communication was issued, to refute any misunderstandings of the pilots regarding the Commission's August 15, 2025, communication. In such communication it was indicated in pertinent part that:

> The Order is intended exclusively to prevent pilots from issuing external communications that appear to be regulatory rules or that impose conditions of service without going through the formal rulemaking process conducted by the Commission, in accordance with the procedure

established in the Uniform Administrative Procedure Act ("LPAU"), or by the United States Coast Guard or of the Puerto Rico Ports Authority, as applicable. The Order does not limit or interrupt operational communications between pilots and vessel captains, agents, users, or regulatory agencies. These communications include but are not limited to: reporting unsafe vessel conditions, identifying hazards at docks or navigable waters, coordinating wind and current conditions affecting maneuvers, discussing the assignment and location of tugboats during assistance, and completing the Master-Pilot Exchange with the approval of the vessel's captain.

16. I have known Captain Carlos Ramos since 1999 approximately. He has participated as Commissioner in many decisions in which less than seven (7) Commissioners have participated and has even participated in decisions of less than three (3) Commissioners. Capt. Ramos never objected to participate in those decisions because of an alleged lack of full collegiate participation or lack of any internal regulation. For example, Carlos Ramos participated in the tariff revisions in 2023; the disbursement of $300,000 for the Tidalis program, the Case of Ayala Colon and the Suape Express on June 24, 2024. In the case of Ayala Colón, I was required in a time frame of twenty-four (24) hours to proceed with the matter alone because Commissioner Carlos Ramos refused to recuse himself despite the evident conflict of interest. Consequently, I formally inhibited him from participating. Having reviewed the complaint, I then issued the decision in favor of the Pilots, and the approval for the obligatory training of pilots Patrick Lopez and Carlos Gutierrez, without any objection. Furthermore, it is a matter of record that the **Pilot Guidelines** were adopted by the Puerto Rico Pilotage Commission office through a vote of the Commissioners but were later declared illegal and null by the Appeals Court of Puerto Rico in case No. KLRA202100158, because they were not adopted in accordance with the mandatory procedural requirements of the "LPAU", Act No. 38-2017).

17. As General Manager of Moran I have not used my position as Commissioner to obtain contracts with NFE as Plaintiffs conclusory allege in their TRO request.

18. I was not instrumental in the expulsion of the San Juan Bay Pilots Association from the Puerto Rico Shipping Association. In fact, I never participated in the voting for such a decision and I was absent at the time the final decision was made. As stated in the Opposition, these are irrelevant and immaterial matters being litigated in the Commonwealth Courts in case no. SJ2025CV06514, *San Juan Bay Pilots Corporation v. Asociación de Navieros de Puerto Rico.*

19. All pilots are aware that the hierarchy of provisions pertaining to shipping transit safety commences with the US Coast Guard at the top via Captain of the Port (COTP) Orders, Marine Safety Information Bulletins applicable in this case to tug/escort requirements or environmental thresholds in federal channels.  After the US Coast Guard then the Pilotage Commission controls with the standards it has promulgated under law, if those standards do not conflict with the prior level of provisions.  When the US Coast Guard sets conditions, those control.  Where the Coast Guard  has not set those conditions, a pilotage-side requirement may be considered via the rulemaking process of the LPAU with appropriate USCG coordination. Proposals that function as navigation-safety rules, e.g. mandatory tug horsepower or escort classes)  are properly handled with the COTP, and not by Pilot's association standards which are not rule of law or unilateral Commission rules which would be invalid as well.

20. That I consider that Plaintiffs' allegations against the Commission are meritless and are not well versed in any fact.

I declare under penalty of perjury that the foregoing is true and correct.

In San Juan, Puerto Rico on this 24th day of September 2025.

Javier Figueroa Sosa